UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 4:24-cr-40043-JPG |
| EDWARD L. STIEF, JR., | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Defendant's motion for reconsideration (Doc. 37). The Defendant filed his motion on February 18, 2025. Being duly advised in the premises having fully considered the issues and arguments raised, the Court **DENIES** the motion.

**I.     BACKGROUND**

**Factual Allegations**

Stief was indicted on several charges of wire fraud, mail fraud, and criminal transfer of property. The Government has alleged the following: the victim is an eighty-nine-year-old man, estranged from his family, living at a care facility. Stief befriended the victim and gained his trust, eventually receiving power of attorney over him. Stief then allegedly pushed to have the victim discharged from the care facility. Stief kept the victim out of meetings between himself and the care facility staff. He justified the victim's exclusion by telling him that attending the meetings with the care facility staff would upset him.

Stief and his fiancé—who he purportedly falsely claimed was a nurse and dental hygienist—told care facility staff that they would offer specialized care for the victim at their

1

home. Over the objections of his care team, the victim was discharged and moved into Stief and his fiancé's home. Stief did not tell the victim that he was voluntarily discharged. Rather, Stief told the victim that he had been "kicked out" of the care facility, leading him to believe he would be unable to return.

  The Government has alleged that Stief was unwilling to care for the victim. The victim was denied food, medication, and access to the restroom. A welfare check was eventually called in, but that check purportedly concluded there was no elder abuse occurring. The victim allegedly feared for his life and called the care facility begging to return—again, the victim was allegedly falsely told that he had been kicked out of the care facility. The care facility informed the victim that he was welcome to return. Upon returning, staff observed that the victim was traumatized and covered in bruises. The victim showed signs of bruising consistent with a tight "hug." There is a dispute whether these bruises were inflicted by Stief intentionally to cause pain or whether they indicate attempts by Stief to lift the victim to help him to the restroom.

  At the time of the victim's discharge from the care facility, he had approximately $330,000 in life savings. Stief was aware of the money when he befriended the victim. Stief told the victim that the cost of the facility was too exorbitant and he promised the victim that they would go into business together after leaving the facility. The victim's life savings were then "invested" in the Defendant's "landscaping business;" however, the Government alleges that Stief spent all of the victim's $330,000 in life savings on himself or for his own benefit.

  While the victim has been returned at the care facility, Stief continues to attempt contact and has expressed a desire to reenter the victim's life. First, Stief had his fiancé go to the care facility to try and convince the victim to "drop the charges." When that did not work, Stief sent him a check for $500, claiming it was proceeds from his "investment" in the landscaping

business. The parties dispute whether this was a well-intentioned attempt to make amends or an intimidation tactic.

### Detention

Stief was indicted on several charges of wire fraud, mail fraud, and monetary transaction in criminally derived property. On August 13, 2024, Stief had his initial appearance before a magistrate judge within this district. The Government moved for pretrial detention.

At the detention hearing before the Magistrate Judge, Stief stared intently and unflinchingly, in a possible attempt to intimidate the Magistrate Judge. The Magistrate Judge noticed this behavior and admonished the Defendant, instructing him to look at the speaker. The Government argues that this was another event in a long pattern of attempts to intimidate those responsible for enforcing and upholding the law.

The Government argued that Stief has a long criminal history that includes several violent offenses. They also cited the recent attempts to contact the victim both directly and indirectly. Based on these facts, the Magistrate Judge was concerned that Stief would directly or indirectly attempt to influence or otherwise contact the victim. This would ordinarily be sufficient to grant a motion for pretrial detention, however the victim lives in a care facility and that facility offers a buffer between himself and Stief. This buffer opened possible avenues that may have allowed the Defendant to be released with conditions that prevented him or his associates from contacting the victim. However, the Magistrate Judge wisely recognized that releasing the Defendant on the premise that the care facility would prevent any illicit contact would impose the unfair and possibly hazardous burden of securing the victim against intimidation or contact by the Defendant's associates or the Defendant himself—who has a

pension for violent ideation. Thus, the extra buffer of the care facility did not diminish the Defendant's danger to the victim.

The Magistrate Judge drew attention to the Defendant's history of alcohol abuse. While alcohol abuse alone is insufficient to warrant detention, it is the Defendant's conduct while abusing alcohol that poses a danger. The Magistrate Judge drew attention to Stief's belligerent and aggressive demeanor when drinking. As the Government highlighted, in one incident, after the Defendant's car was towed, Stief made dozens of calls to two different police departments in a few hours of each other. At one point, he threatened to "show up" and "beat the [expletive]" of a 911 dispatcher. The Defendant claims he was intoxicated at the time and that he was under the impression he was speaking to his cousin. Unless the Defendant's cousin is a police officer or 911 dispatcher, that explanation is just as bizarre as it is nonsensical; however, even if that were true, the Defendant's behavior is still inexcusable—as the Government argued in their response opposing the Defendant's motion. If the Defendant had no qualms in threatening violence against a 911 dispatcher, harassing two different police departments, and—at the time of the detention hearing—staring down the Magistrate Judge in open court; the Government begged the question of what the Defendant was willing to do to an ordinary civilian or the victim.

While the Defendant has no violent convictions in a long while, there was an arrest for domestic battery in 2022 even though he was not charged. The Defendant's criminal history, attempts to intimidate law enforcement, and recent arrests, in combination with the Defendant's drinking and inability to control himself while drunk, was deeply concerning to the Magistrate Judge. Based on all these factors, the Magistrate Judge found that there were no feasible conditions that could be imposed on the Defendant that would make his detention unnecessary. Accordingly, the Magistrate Judge granted the motion for detention.

Stief now asserts that there are insufficient grounds to detain him. Stief argues that he is not a danger to the victim, that his criminal history is an insufficient basis for detention, and that any violent convictions were more than ten years ago. Additionally, Stief argues that a vague generalized threat to the community is insufficient cause for detention. If released, Stief would live with his fiancé at their home. Stief also argues that there are conditions the Court could impose that would make detention unnecessary. Notably, Stief does not present any additional facts that were unavailable at the detention hearing.

The Government opposes the Defendant's motion for reconsideration. The Government lays out Stief's conduct, expands on it in some places, and explains that his actions demonstrate sufficient cause to support detention.

## II.     LEGAL STANDARD

When considering pretrial detention, the presiding judicial officer analyzes several factors and determines whether there are conditions that can be imposed that would safeguard the community and any other person. 18 U.S.C. § 3142(b). Some of the relevant conditions that may be imposed upon a defendant are the requirements that he "avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense" and "refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance." 18 U.S.C. §§ 3142(c)(1)(B)(v), 3142(c)(1)(B)(ix).

When the Government moves for pretrial detention, the Court must hold a detention hearing;

> If, after [that] hearing . . . the judicial officer finds that no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community, [that] judicial officer *shall* order detention of the person before trial.

18 U.S.C. § 3142(e)(1) (emphasis added). In other words, if a judicial officer finds that a

Defendant is incapable of following the necessary conditions; detention is not discretionary.

A magistrate judge's order of detention in a criminal case can be "appealed" to the court of original jurisdiction—here, the District Court. *See* 18 U.S.C. §3145(b). The District Court reviews such orders de novo. *See e.g.*, *United States v. Middleton*, No. 24-CR-40036-JPG, 2024 WL 5246595, at *2 (S.D. Ill. Dec. 30, 2024); *United States v. Farmer*, No. CR 04-30139-WDS, 2005 WL 8167277, at *1 (S.D. Ill. June 24, 2005). The District Court follows the same process for analyzing a detention as the magistrate judge, i.e., the District Court conducts its own analysis under 18 U.S.C. § 3145.

### III. ANALYSIS

In his brief, the Defendant points out that his previous convictions for violence were far in the past. Additionally, the Defendant argues that a generalized desire to preserve the safety of the community is insufficient to support detention. Both of these claims are true, but neither the Defendant's distant, violent criminal history, nor a generalized concern for the safety of the community were bases for granting the motion for detention. While the Defendant's brief addresses his lack of ability to flee and gainful employment, those did not factor in the Magistrate Judge's decision to grant the motion.

There were a few primary reasons provided for granting the motion for detention: the Defendant's multiple attempts to contact the victim even after his arrest, the Defendant's brazen attempts to harass and intimidate law enforcement, and the Defendant's excessive drinking combined with his violent ideation and inability to control himself while intoxicated.

The Government has not alleged that the Defendant poses a generalized threat to the community; even if the Defendant was a generalized threat to the community, that was not one of the bases for granting the order of detention. The Magistrate Judge concluded, and this Court

concurs, that the Defendant poses a unique risk of contacting the victim as exhibited by his past behavior. Additionally, it would be unfair and unjust to essentially deputize the care facility staff and have them serve as enforcers in case the Defendant or one of his associates attempted to violate that condition. Moreover, given the Defendant has shown violent ideation and inability to control himself when intoxicated, conscripting the care facility staff may place them in danger.

The Magistrate Judge considered all this information and relayed it to the Defendant prior to granting the Government's motion for detention. The Defendant has not presented any additional facts nor any information that was unavailable to the Magistrate Judge prior to granting the order of detention. While this Court reviews the decision to grant the order of detention de novo, this Court sees neither any flaws nor any defects in the Magistrate Judge's reasoning. Furthermore, had the detention hearing been held before this Court, this Court likewise would have concluded there were no conditions nor any combination of conditions that could be placed on the Defendant to accomplish the goals of 18 U.S.C. § 3145. Consequently, this Court would have similarly been compelled under 18 U.S.C. § 3142 to grant the motion.

IV.   **CONCLUSION**

Finding no defects nor flaws in the Magistrate Judge's reasoning, and being in full concurrence with the Magistrate Judge's determination that there are no conditions nor combination of conditions that would reasonably accomplish the goals of 18 U.S.C. § 3145, the Court hereby **DENIES** the Defendant's motion for reconsideration. (Doc. 37).

**IT IS SO ORDERED.**
**DATED:  March 6, 2025**

                                          *s/ J. Phil Gilbert*
                                          **J. PHIL GILBERT**
                                          **DISTRICT JUDGE**